UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE MIGUEL VASQUEZ,

                              Plaintiff,                         03 Civ. 3905 (RJH)

                -against-                              **MEMORANDUM OPINION**
                                                              **AND ORDER**

CAREY,

                              Defendant.

---

*Pro se* plaintiff Jose Miguel Vasquez originally brought this action against five employees of the United States Customs Service in their individual capacities, alleging that they unlawfully assaulted him during an arrest on February 19, 2002.  After the filing of the complaint, it became apparent that the five originally named defendants had not been present during plaintiff's arrest, and plaintiff was permitted to amend his complaint to name as defendants the six officers who had been present during his arrest. Subsequently, having maintained all along that only one of the six officers had assaulted him and believing that that he had identified the officer who had committed the assault by examining photographs of the six defendants, plaintiff voluntarily dismissed his claims against five of the six defendants with prejudice, leaving Tim Carey as the sole remaining defendant in the lawsuit.  Carey then moved to dismiss the complaint or, alternatively, for summary judgment on the ground that he was not, in fact, the officer who assaulted plaintiff.  Plaintiff concedes, upon review of Carey's motion, that Carey was not the officer who assaulted him and that his claims against Carey should be dismissed. However, plaintiff now cross-moves to reinstate his claims against defendant Fred Klie,

contending that the evidence now makes clear that Klie was the officer who committed the alleged assault.  For the reasons set forth below, the Court grants Carey's motion for summary judgment **[67]** and also grants plaintiff's cross-motion.

## BACKGROUND

The facts of this case are set forth in greater detail in this Court's prior opinions, *Vasquez v. Mill*, No. 2003 Civ. 3905 (RJH), 2005 WL 1902913 (S.D.N.Y. Aug. 8, 2005) and *Vasquez v. Mill*, No. 2003 Civ. 3905 (RJH), 2006 WL 2789914 (S.D.N.Y. Sept. 25, 2006), familiarity with which is assumed.

On the night of February 19, 2002, plaintiff and an individual named Julio De La Cruz, who had been traveling together in a green car, were arrested in the Bronx in connection with a drug money laundering investigation.  A total of six agents and officers were involved in the arrest in some capacity, among them special agent Carey and detective Klie.  Plaintiff was taken into physical custody by Klie, who encountered plaintiff outside of the green car, turned him around so that his hands were on the roof of the car, frisked him and handcuffed him.  (*See* Pantoja Decl. Ex. 4 (Transcript from the Trial of Julio de la Cruz) (hereinafter "De La Cruz Trial Tr.") at 264:20-266:5; Carey Decl. ¶17.)  Plaintiff contends that after he was handcuffed, he was beaten by the officer who took him into custody.  (*See* Amended Complaint; Pl. Cross-Motion ¶8.)  During the arrest, Carey's attention was focused primarily on De La Cruz.  (*See* Carey Decl. ¶¶ 10-16.)

Shortly after the arrest, plaintiff and De La Cruz were taken to a nearby police station.  (Vasquez Decl. ¶ 17; De La Cruz Trial Tr. at 270:6-16.)  Approximately three hours later, plaintiff and De La Cruz were transported to the Metropolitan Detention

Center by Carey and special agent Shawn Meehan.  (*See* Vasquez Decl. ¶ 19; Carey Decl. ¶21; May 12, 2008 Letter from Peter M. Skinner to Magistrate Judge Fox.)  The following morning (February 20, 2002), two law enforcement officers transported plaintiff to court for his arraignment before a magistrate judge.  (*See* Vasquez Decl. ¶ 23; Carey Decl. ¶ 25.)  Prison records indicate that Klie was one of the two officers who transported plaintiff from the prison to court on the morning of February 20, 2002; however, the identity of the second transporting officer is unknown.[1]  Carey was present in the courtroom during plaintiff's arraignment, but contends that he did not transport plaintiff from prison to court that day.  (May 12, 2008 Letter from Peter M. Skinner to Magistrate Judge Fox.)  Plaintiff later pled guilty to one count each of conspiracy to distribute narcotics, money laundering, and re-entry of a deported alien and was sentenced to 168 months in prison.  (Pantoja Decl. Ex. 3. at 11.)  He is currently incarcerated in a federal prison in Allenwood, Pennsylvania.

On May 29, 2003, plaintiff filed his original complaint in this action, naming P. Mill, C. Helay, G. Balderacchi, P. Goode, and M. Maura as defendants.  On September 25, 2006, plaintiff voluntarily dismissed all claims against these defendants because they were not involved in his arrest and the alleged assault.  *Vasquez*, 2006 WL 2789914, at *1, 3.  However, the Court ordered the United States Attorney's Office ("USAO") to

---

[1] This information is drawn from a "Prison Remand Form," which identifies Carey as the "Remanding Official," Klie as the "Removing Official," and a third officer not named as a defendant in this action as the "Receiving Official."  (*See* Pantoja Decl. Ex. 6.)  The form is somewhat difficult for a layperson to interpret, but Carey's counsel represents that it shows that Klie picked up Vasquez from the Metropolitan Detention Center at 9:25 a.m. on February 20, 2002 and took him to his arraignment.  (*See* May 12, 2008 Letter from Peter M. Skinner to Magistrate Judge Fox.) The form does not mention that a second officer also transported plaintiff to court.  (*See id.*)  Defense counsel represented that Klie does not recall transporting plaintiff to court on February 20, 2002, but has no reason to doubt the accuracy of the Prison Remand Form, which indicates that he did so.  (*See* May 12, 2008 Letter from Peter M. Skinner to Magistrate Judge Fox.)

identify plaintiff's arresting officers and granted plaintiff leave to file an amended complaint against those officers. *Id.* at *6.

After the USAO identified Tim Carey, Ryan Hill, Shawn Meehan, Santiago Soto, Fred Klie and Edward Courtney as the officers in the vicinity of plaintiff's arrest, plaintiff filed an amended complaint on November 20, 2006 naming these six officers as defendants. Plaintiff contends that the officer who arrested him "beat and stumped him after he had been arrested" and that this constituted excessive force. (*See* Amended Complaint at 3.) Plaintiff maintains that the officer who beat him was also one of the two officers who picked him up from prison and transported him to court for his arraignment on February 20, 2002. (Vasquez Decl. ¶¶ 22-24; Jan 3, 2008 Conf. Tr. at 8:20-25, 11:9-12.) However, plaintiff was unable to identify that officer by name from among the six names provided to him by the USAO, and therefore, named all six officers in his amended complaint. (Jan 3, 2008 Conf. Tr. at 8:20-25 ("The person who laid his hands on me was the police officer who brought me to court on the following day who present me before the magistrate judge. That's the only police officer who laid hands on me. I don't know the name of that police officer, and that's why I put down all the names.")

Sometime in late 2007, defense counsel informed the Court that defendants were interested in moving for summary judgment. After the Court expressed concern that plaintiff might need discovery to determine which of the six defendants had allegedly used excessive force against him on the night of his arrest, defendants consented to limited discovery sufficient to permit plaintiff to identify the individual he believed to have violated his constitutional rights. (*See* Pantoja Reply Decl. Ex. 3.) By Order dated

March 11, 2008, the Court directed such limited discovery to be undertaken under the supervision of Magistrate Judge Fox.  (Pantoja Reply. Decl. Ex. 4.)

On May 13, 2008, Judge Fox held a telephonic status conference with the parties. The parties discussed the difficulty of identifying the officer who plaintiff alleges to have beaten him because although plaintiff had consistently maintained that the officer who assaulted him had also transported him to his arraignment on Feburary 20, 2002, the record indicated that there were *two* officers (Klie and an unknown officer) who transported plaintiff from prison to court for his arraignment and a third officer (Carey) was also present in the courtroom during that proceeding.  After some discussion regarding possible procedures that would enable plaintiff to identify the proper defendant, Judge Fox ordered defense counsel to gather photographs of all six defendants and to show them to plaintiff to see if he could identify the officer who allegedly assaulted him. (*See* Pantoja Reply Decl. Ex. 5.)

While the government was in the process of gathering photographs of the six defendants, plaintiff sent a letter to the USAO dated June 26, 2008 requesting discovery pursuant to Federal Rule of Civil Procedure 56(f).  Among other things, plaintiff requested "[c]opies of the arresting agency's reports dealing with the investigation of that day and resulting surveillance; to include the actual arrest," and all "reports of the subsequent criminal prosecution and [the] involvement in that process [of any agencies involved]."  (Pantoja Reply Decl. Ex. 5.)  By letter to Magistrate Judge Fox dated July 14, 2008, the government opposed this request to the extent that the Rule 56(f) motion was not the appropriate vehicle for discovery, there being no summary judgment motion pending at that time.  (*See id.*)  The government's letter also informed Judge Fox that the

government had been able to gather photographs of five of the six defendants, and was still working to obtain a photograph of Courtney.  (*Id.*)

On July 28, 2008, Judge Fox held another status conference.  Judge Fox denied plaintiff's request for discovery under Rule 56 as either premature or misplaced, there being no summary judgment motion pending at that time.  Judge Fox stated that he believed it was still best to proceed by having plaintiff attempt to identify the proper defendant through review of the officers' photographs, and that additional discovery would only be necessary if plaintiff was unable to identify his attackers from the photographs.  The day after the conference, Judge Fox issued an order directing defendants to attempt to secure a photograph of Courtney via subpoena, to disclose all relevant photos of the six defendants to plaintiff on or before August 29, 2008, and to advise the Court in writing by September 5, 2008 whether, after reviewing the photographs, the plaintiff was able to identify the officer whom he alleges assaulted him. (Docket Entry 53.)

On August 27, 2008, defense counsel deposed plaintiff and showed him photographs of the five defendants whose photographs had been located as of that date. (*See generally,* Pantoja Decl. Ex. 8.)  Plaintiff was informed at the start of the deposition that counsel did not yet have a photograph of Courtney.  (*Id.* at 4:1-10.)  Plaintiff was then handed five photographs.  (*See id.* at 4:25-5:1.)  Plaintiff reviewed the photographs and stated that four of the five photographs—those of Klie, Meehan, Soto and Hill—were not the officer who assaulted him.  (*See id.* at 5:2-9.)  That left one photograph, of defendant Carey, for plaintiff to review.  Plaintiff remarked that the photograph of Carey was out of focus and not very clear, but noted that "it does look like him." (*Id.* at 6:8-14.)

The testimony that followed is somewhat unclear, but plaintiff appeared to suggest that the officer who injured him was smaller than Carey appeared from the photo.  (*See id.* at 6:13-7:18.)  Plaintiff testified that the officer who assaulted him was shorter than he was—plaintiff is 5'8—and was probably about 5'5 or 5'6 in height and about 160 pounds.  (*See id.* at 6:13-21.)  Ultimately, plaintiff did not provide a definitive identification at his August 27, 2008 deposition because he wanted to be able to compare the photograph of Carey that he had singled out to the missing photograph of Courtney before making an identification.  (*See id.* at 6:2-4, 7:16-18, 8:2-3.)  He also requested that he be provided with a clearer photograph of Carey for the next deposition.  (*See id.* at 8:25-9:1.)

Meanwhile, plaintiff continued his efforts to obtain broader discovery from defendants.  Sometime between July 28, 2008 and September 5, 2008, plaintiff requested that his June 26, 2008 application for discovery under Rule 56, which Judge Fox had rejected as premature and procedurally improper, be deemed an application for discovery under Rule 26 and/or 37 of the Federal Rules of Civil Procedure.  By Order dated September 5, 2008, Judge Fox again denied that request as premature, noting that the Court had permitted only limited discovery to enable plaintiff to identify the law enforcement officer whom he alleges violated his rights.  (Docket Entry 54.)  Judge Fox noted that "it is more prudent to allow the parties to complete their limited discovery activities and, thereafter, determine whether additional discovery is warranted."  (*Id.*)

Based on plaintiff's testimony that Klie, Soto, Meehan and Hill were not the officers who had injured him, at an October 1, 2008 conference in which plaintiff participated telephonically, defense counsel proposed that these defendants be dismissed

from the case.  Plaintiff agreed with that proposal.  (*See* Pantoja Reply Decl. ¶2.)  On October 14, 2008, defense counsel sent plaintiff a proposed stipulation and order dismissing these defendants with prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.  (Pantoja Reply Dec. Ex. 6).  By letter dated October 20, 2008, plaintiff returned an executed copy of the stipulation (the "October 20, 2008 Stipulation"), which was so ordered by the Court on November 6, 2008.  (Docket Entry 59.)

After defense counsel obtained a photograph of Courtney, plaintiff was deposed again on November 26, 2008 to enable him to compare the photograph of Carey that he had been shown on August 27, 2008 to a clearer photograph of Carey and to the photograph of Courtney.  Plaintiff examined all three photographs, then testified unequivocally while reviewing the new, clearer photograph of Carey that Carey was the officer who had assaulted him.  He stated, "This is the guy who hit me. . . I'm a hundred percent sure as if it were right now.  Tim Carey."  (*See* Pantoja Reply Decl. Ex. 8 at 8:19-9:7.)  Based on this testimony, plaintiff agreed to dismiss his claims against Courtney with prejudice, and on January 13, 2009, he executed a stipulation to that effect.  (*See* Pantoja Reply Dec. Ex. 14.)  On January 26, 2009, the Court so ordered the stipulation, leaving Carey as the sole remaining defendant in the case.  (Docket Entry 62.)

In early February 2009, Carey served initial disclosures and discovery requests upon plaintiff pursuant to a pre-trial schedule set by the Court on January 7, 2009.  Although this schedule granted plaintiff a right to conduct discovery, plaintiff never sought any discovery from Carey.  On July 14, 2009, Carey filed the present motion to dismiss and/or for summary judgment, alleging that he was not the proper defendant

because he neither arrested nor had any physical contact with plaintiff on the night of his arrest, nor transported him to court the following morning.  Moreover, Carey identified Fred Klie as the officer who had arrested plaintiff and who had transported him to his arraignment the following day.  (Def. Br. at 17-18.)  In response, plaintiff cross-moved for what he described as re-joinder of Klie, alleging that he had dismissed Klie inadvertently before adequate discovery had been conducted.  (*See* Pl. Opp. ¶1.)  Carey, who is represented by the same counsel as Klie, opposed the re-joinder of Klie.

## DISCUSSION

1.      **Carey's Motion to Dismiss and/or for Summary Judgment**

Carey moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Carey maintains that he never had any physical contact with plaintiff or observed or heard of any force of any kind being used against plaintiff, such that he cannot as a matter of law be held liable for use of excessive force against plaintiff.  (*See* Def. Br. at 12, 16-19; Carey Decl. ¶ 22-24.)  Plaintiff acknowledges based on his review of the evidence and declarations submitted by Carey that "at this juncture it is painfully obvious that Carey is not the person who took him into custody" and that "it is also patently obvious that Klie was."  (Pl. Cross-Motion ¶¶ 11, 12.)  He concedes that under these circumstances, he cannot prevail on his claims against Carey as a matter of law, noting that "[s]uccinctly, Plaintiff Vasquez has reviewed the Memorandum and supporting materials and has discerned that the Defendant [Carey] can meet his obligation(s) under the Federal Rules of Civil Procedure to have the cause of action

removed from himself." (Pl. Opp. ¶2.) Consequently, Carey's motion for summary judgment dismissing all claims against him is granted.

2.    **Plaintiff's Cross-Motion**

A voluntary dismissal with prejudice arising out of an agreement of the parties has the effect of a final adjudication on the merits of all matters contemplated in the agreement. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995). In order to obtain relief from such a dismissal, a party "must invoke Rule 60(b) to vacate [all or part] the initial judgment." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Here, although plaintiff characterizes his motion as a motion for re-joinder of Klie, in effect plaintiff seeks to vacate the portion of the October 20, 2008 Stipulation dismissing his claims against Klie (but to leave his dismissal of the claims against Hill, Meehan, and Soto intact). The Court thus construes plaintiff's motion as a motion pursuant to Federal Rule of Civil Procedure 60(b) to vacate the October 20, 2008 Stipulation in part. Carey, through his counsel, opposed plaintiff's Rule 60(b) motion.[2]

Rule 60(b) sets forth six grounds on which a court, in its discretion, can rescind or amend a final judgment or order. It provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud…, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, release, or discharged. . .; or (6) any other reason justifying relief from the operation of the judgment.

---

[2] The opposition to plaintiff's Rule 60(b) motion was formally made by Carey; however, Carey has no interest in the motion regardless whether he is a party to the action or not. Inasmuch as both Carey and Klie are being represented by the same Assistant United States Attorney, the Court understands that the arguments being advanced by defense counsel in opposition to plaintiff's Rule 60(b) motion are in fact being advanced on behalf of Klie.

Fed. R. Civ. P. 60(b).  Rule 60(b) was designed to strike a balance between serving the ends of justice and preserving the finality of judgments.  *Nemaizer*, 793 F.2d at 61.  "It should be broadly construed to do substantial justice, [] yet final judgments should not be lightly reopened."  *Id.*  (internal citations and quotation marks omitted).  "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."  *Id.*  In general, courts require that the evidence in support of the motion to vacate a final judgment be "highly convincing," that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties.  *Kotlicky v. United States Fidelity and Guaranty Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citations omitted); *Crystal Waters Shipping Ltd. v. Sinotrans Ltd. Project Transp. Branch*, 633 F.Supp.2d 37, 41 (S.D.N.Y. 2009).  Where the parties have submitted to an agreed-upon disposition rather than seeking a resolution on the merits, the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal.  *Nemaizer*, 793 F.2d at 63.  Whether to grant such a motion is within the sound discretion of the district court, with appellate review limited to determining whether that discretion has been abused.  *Id.* at 61.

Plaintiff's papers invoke subsections (1), (2), (3) and/or (6) of Rule 60(b) as possible grounds for vacatur of the dismissal of his claims against Klie, but plaintiff's main contention is that his dismissal of Klie was mistaken and inadvertent because it was premised on a misidentification of Carey as the officer whom he alleges assaulted him. The Court, therefore, analyzes plaintiff's claims under subsection (1) of Rule 60(b), which provides that a party may be relieved from a final judgment on the ground of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  *See*

*Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) (where *pro se* plaintiff mistakenly moved to dismiss his petition based on advice from a "jailhouse lawyer," his request for relief under Rule 60(b) was properly characterized as a request for relief under subsection (1) based on a "mistake.")

"All Rule 60(b) motions must 'be made within a reasonable time,' Fed. R. Civ. P. 60(b), [] and motions under Rule 60(b)(1), (2) and (3) must be made within one year after the judgment." *Kotlicky*, 817 F.2d at 9. Here, the stipulation from which plaintiff seeks relief was entered into on or about October 20, 2008, and plaintiff filed his motion requesting relief from the stipulation on or about September 28, 2009. Thus, plaintiff's motion falls within the one year time limit for motions seeking relief under Rule 60(b)(1). Carey nonetheless maintains that it was not filed "within a reasonable time" because plaintiff failed to pursue discovery after learning in October 2006 that Klie was present during his arrest and cannot now transform his lack of diligence into a meritorious claim that he dismissed Klie from the case by mistake. (Def. Reply at 9.) This argument ignores the fact that before January 2009, the Court permitted only *limited* discovery for the purpose of determining which of the six defendants assaulted plaintiff, and that the procedure involved asking plaintiff to identify his attacker from photographs rather than permitting him to engage in other forms of discovery. Moreover, plaintiff did request document discovery twice in the summer of 2008, and both requests were denied by Judge Fox. (*See* pages 5-7, *supra*.)

Carey also maintains that "with reasonable diligence" plaintiff could have discovered his mistake "long before" he filed his cross-motion in September 2009 because he could have taken discovery from Carey after the Court issued its January 7,

2009 Order permitting discovery to proceed.  But while plaintiff may have learned of his

mistake a few months earlier had he conducted pre-trial discovery between January 2009

and the filing of Carey's motion in July 2009, he would still not have learned of it in time

to avoid his mistaken acceptance in October 2008 of defense counsel's proposed

stipulation dismissing defendants Klie, Hill, Meehan, and Soto.  Given that there is no

indication that defendant Klie has suffered any prejudice whatsoever from the delay,

other than being forced to resume his defense of this action, the Court concludes that

plaintiff's request for Rule 60(b) relief was made within a reasonable time after he

realized his mistake.[3]  Accordingly, the Court finds that Vasquez's motion for Rule 60(b)

relief is timely.  *See Kotlicky*, 817 F.2d at 9.

Turning to the merits of plaintiff's request for relief under Rule 60(b)(1), the

Court concludes that this case is one of those exceptional situations in which substantial

justice requires that plaintiff's voluntary dismissal of his claims against Klie be vacated.

The Court does not grant Rule 60(b)(1) relief lightly, but is driven to exercise its

discretion to do so by the particular facts surrounding plaintiff's identification of Carey as

the proper defendant in this action and his corresponding dismissal of the other five

defendants based on that identification, which the Court find to be troubling.

---

[3] Carey also appears to argue that plaintiff should have figured out that Klie was the appropriate defendant based on the Prison Remand Form (Pantoja Decl. Ex. 6), which was shown to plaintiff at his deposition on May 27, 2009.  (*See* Def. Reply at 11.)  While Carey maintains that this form identified Klie as the officer who had taken plaintiff to court the morning after the arrest, the form identifies three officers (Carey, Klie, and a third officer), and nothing on the form explicitly indicates which of the three officers actually took plaintiff to court.  To the extent that Carey is arguing that the identification of Klie as the "removing official" should have made clear to plaintiff that Klie transported him to court, the Court finds that argument to be unpersuasive.  The phrase "removing official" likely has minimal meaning to non-law enforcement personnel, and a *pro se* plaintiff whose first language is not English surely cannot be expected to know that in the context of a Prison Remand Form, the term "removing official" means the individual who transported the prisoner from prison to court.  In addition, since Carey's name is also listed on the form as one of three officers who had been involved with Vasquez's prison remand, there is no reason why this document should have alerted Vasquez that Carey was the wrong defendant.

It is undisputed that from the outset of this case, plaintiff has been trying to identify the officer whom he alleges to have assaulted him during his arrest on the night of February 19, 2002.  Plaintiff has consistently maintained that the officer who assaulted him was the same officer who arrested him and transported him to court the following day for his arraignment.  (*See* Amended Complaint; Jan. 3, 2008 Conf. Tr. at 8:20-25, 11:9-12.)  Plaintiff dismissed his claims against Klie after reviewing photographs of the six officers present during his arrest because he believed—erroneously, as it now appears—that the photograph of Carey was a photograph of the officer who arrested him and allegedly assaulted him.  However, it appears to be undisputed on the present record that Klie both took plaintiff into custody and transported him to Court the morning after his arrest.  Klie testified during the trial of Julio De La Cruz, that he was the officer who handcuffed Vasquez, and Carey's July 2009 declaration corroborates that testimony.[4] (De La Cruz Trial Tr. at 264:20-266:5; Carey Decl. ¶17.)  Furthermore, prison records confirm that Klie also transported plaintiff from prison to court for his arraignment on February 20, 2002.  (Pantoja Decl. Ex. 6.)  Thus, on the record presently before the Court it seems highly likely that Klie is the proper defendant in this case and that plaintiff's identification of Carey was a mistake.[5]  Plaintiff's evidence in support of his contention that he made a mistake in dismissing Klie is, thus, "highly convincing."  *See Kotlicky*, 817 F.2d at 9.  The Court notes, for the record, that although Klie has been represented by

---

[4] While defense counsel (who represents both Carey and Klie) stated at the January 3, 2008 conference that his understanding was that either Courtney or Soto had handcuffed plaintiff and effected his arrest, that understanding conflicts with Klie's testimony from the De La Cruz trial, and counsel appears to have retreated from that view in the briefs submitted in connection with the present motion.

[5] If plaintiff is correct that the officer who assaulted him is the same officer who arrested him and transported him to court for his arraignment, the only other person who might possibly be the proper defendant in this action is the unknown officer who transported plaintiff to court on February 20, 2002 with Klie.  However, there is no evidence in the record currently before this Court that indicates who that officer was and whether he had any contact with plaintiff during his arrest.

the same counsel who submitted briefs on Carey's behalf in connection with the present motions, Klie did not submit a declaration or any other evidence in response to plaintiff's motion stating that he is not the proper defendant or disputing the that he handcuffed and arrested plaintiff on February 19, 2002 and accompanied him to court the following morning.

Plaintiff's erroneous identification of Carey from the photographs as the officer who assaulted him, and his dismissal of Klie based on that mistake of fact, is not the type of gross negligence, inexcusable neglect, or willful misconduct that the Court believes should preclude the relief requested under Rule 60(b)(1).  *See Kotlicky,* 817 F.2d at 9 (reversing district court's denial of relief under Rule 60(b)(1) where appellant was dilatory in conducting some phases of the litigation but where the conduct that led to the dismissal was not due to any gross negligence on his part);  *U.S. v. Gould*, 302 F.2d 353, 355-58 (5th Cir. 1962) (reversing district court's denial of motion to vacate stipulation voluntarily entered into by the parties where it appeared to have been premised upon a mistake of fact by one party); *cf. Moses v. ER Solutions*, No. 09-CV-439, 2009 WL 5216931, at *1 (N.D. Okla. Dec. 31, 2009) ("A plaintiff's voluntary dismissal for personal convenience, which he later regrets, does not present the extraordinary circumstances necessary for such relief… and does not rise to the level of 'mistake, inadvertence, surprise, or excusable neglect' warranting relief under Rule 60(b)(1).").  Plaintiff, who was born in the Dominican Republic, remarked at his deposition that "all white people look alike to him."   (Pantoja Reply Decl. Ex. 8 at 10:19-20.)   The depositions in which plaintiff was asked to examine the photographs were held over six and a half years after the arrest took place and over five years after plaintiff filed his

case—the delay being attributable in part to the difficulties plaintiff faced in trying to identify the officer whom he alleges assaulted him.[6]

In finding that Rule 60(b)(1) relief is proper in this context, the Court is guided by a number of salient facts that place plaintiff's mistake in context and suggest that the equities of the situation warrant relief under Rule 60(b)(1).  Notably, the record reflects that plaintiff, who has proceeded *pro se* for the entirety of this action, diligently and repeatedly requested additional discovery of law enforcement records throughout the summer of 2008 in an effort to identify the proper defendant, and that his requests for such discovery were denied.  While the Court sees no error in Judge Fox's denial of such requests at that time, it notes that had plaintiff's requests been granted, plaintiff may well have had evidence in his possession at the time he examined the officers' photographs and signed the October 20, 2008 Stipulation that would have alerted him to the fact that he had selected the wrong defendant from the photo array and that Klie is, in all likelihood, the proper defendant.   For example, the De La Cruz trial transcript, which likely would have fallen within the scope of plaintiff's summer 2008 discovery requests but which plaintiff appears to have seen for the first time when Carey filed his motion for summary judgment in July 2009, reveals that Klie was the officer who handcuffed plaintiff on February 19, 2002 and took him to court on February 20, 2002, and that Carey was with De La Cruz during plaintiff's arrest.  Thus, discovery could have acted as at least a partial safeguard against the risk of misidentification generated by the photo identification procedure adopted by the Court because it could have provided plaintiff

---

[6] Whereas courts in this circuit have consistently denied Rule 60(b) relief to parties based on their attorney's mistakes or their failure to properly evaluate the consequences of a particular course of conduct, *see, e.g., Nemaizer*, 739 F.2d at 62, neither *Nemaizer* nor any of the other cases cited by Carey present the unique factual circumstances that are presented here.

with the tools to correct his mistake before it was too late.  Against this backdrop, the Court finds that plaintiff's error in identifying Carey cannot fairly be said to be the product of inexcusable neglect, gross negligence, or any other intentional conduct by plaintiff, but was merely a good faith mistake of fact.  In light of the repeated denial of his discovery requests, plaintiff has shown good cause for his failure to appreciate this mistake prior to the entry of the October 20, 2008 Stipulation.[7]

Under these circumstances, the Court does not believe that plaintiff's potentially viable claims for the denial of his constitutional rights should be dismissed before he has an opportunity to be heard on the merits of his claims.  To be sure, plaintiff's mistaken identification of Carey as his attacker has caused delay and inconvenience, and will likely weaken his case against Klie if his claims make it to trial.  However, dismissing plaintiff's case entirely, after he has been prosecuting it diligently for almost seven years, is a harsh remedy and seems unjust on these facts.  *See Asia Apparel, LLC v. Cunneen,* No. 3:02-cv-469, 2005 WL 343999, at *2 (W.D.N.C. Dec. 13, 2005) (while plaintiff deserved some reprimand for his inadvertent failure to respond to defendant's motion to dismiss, based largely on his legal inexperience and his mistaken belief that the motions were duplicative of earlier motions, the "harsh remedy of dismissal without prejudice [was] not merited.")  This is particularly true because Klie's counsel has not articulated

---

[7] These circumstances arguably would also support relief under Rule 60(b)(2) based on newly discovered evidence—namely, the De La Cruz trial transcript in which Klie admitted to having arrested plaintiff and Carey testified that he had been with De La Cruz during plaintiff's arrest.  Because this evidence existed at the time of dismissal, it can provide a basis for vacatur of the voluntary dismissal if plaintiff, with reasonable diligence, could not have obtained the evidence prior to the dismissal.  *See* Fed. R. Civ. P. 60(b)(2); *Crystal Waters Shipping*, 633 F.Supp.2d at 42 (analyzing whether newly discovered evidence warranted vacatur of voluntary dismissal).  Inasmuch as Judge Fox denied plaintiff's requests for additional discovery from defendants pending plaintiff's review of a photo array of the six officers, plaintiff, with reasonable diligence, may not have been able to obtain this information prior to October 2008 since his ability to take discovery from defendants was limited by the procedures set by the Court.

any undue hardship that Klie will suffer if the voluntary dismissal of plaintiff's claims against him is vacated, beyond the inconvenience of having to resume defense of this action.

Moreover, the facts surrounding plaintiff's dismissal of Klie and misidentification of Carey as the arresting officer are such that they should have raised obvious questions about whether plaintiff had identified the correct officer and whether he was dismissing the right defendants.  For example, although plaintiff testified during his November 2008 deposition that he was "a hundred percent sure" that Carey was the officer who assaulted him, plaintiff also testified very clearly during his August 2008 deposition that the officer who assaulted him was shorter than he was, and was probably about 5'5 or 5'6 in height; Carey, on the other hand, is 6'3—a fact that would presumably have been unknown to plaintiff, but known to defendants or their counsel at the time the October 20, 2008 Stipulation was executed.  (*See* Pantoja Decl. Exs. 8, 17; Pantoja Reply Decl. Ex. 8 at 9:6.)  That discrepancy alone should have raised a red flag about the accuracy of plaintiff's identification of Carey.  Similarly, questions should have been raised about the accuracy of plaintiff's identification in light of the fact that plaintiff testified numerous times that the officer he was trying to identify was the officer who had taken him into custody and taken him to court the morning after his arrest, whereas defendants have admitted that Klie, rather than Carey, handcuffed plaintiff on February 19, 2002 and transported him to court on February 20, 2002.  Thus, when all the circumstances surrounding plaintiff's misidentification of Carey are considered, it should not have come as a huge surprise to defendants, particularly to Klie, that plaintiff dismissed Klie by

mistake.[8]  In this context, restoring Klie to the position he was in before plaintiff made this mistake can hardly be said to constitute undue prejudice to Klie, and Klie has not so argued.  *See Kotlicky,* 817 F.2d at *9 ("appellee will be faced with the burden of defending itself; however, the policy in favor of hearing appellant's claims on the merits is preeminent."); *Mazzone v. Stamler*, 157 F.R.D. 212, 214-15 (S.D.N.Y. 1994) (granting motion to vacate settlement where it was based on mistake of law that was clearly responsible for plaintiff's decision to dismiss the case and where there was no evidence that granting the motion would cause significant prejudice to defendant).

In light of all these facts, the Court finds that plaintiff is entitled to withdraw from the stipulation dismissing his claims against Klie under Rule 60(b)(1) on the grounds of mistake and inadvertence.  Plaintiff's inadvertent dismissal of Klie, after over six years of diligent prosecution of this case, appears to have been the result of a combination of decisions made by all parties in the case—plaintiff, defendants, and the Court—that all contributed to plaintiff's misidentification of Carey.  For example, while the Court ordered plaintiff to attempt to identify the proper defendant by reviewing photographs of the six officers, had plaintiff been given an opportunity to see an officer in person or had he had access to discovery relating to the circumstances surrounding his arrest and arraignment, it seems unlikely that plaintiff would have identified Carey as his attacker.  In retrospect, the identification procedure employed may have generated a greater risk of misidentification than available alternative procedures.

Carey argues in his reply papers—again, presumably on behalf of Klie—that even if relief under Rule 60(b) might otherwise be appropriate, it should be denied because

---

[8] Indeed, after reviewing the record in full, the court is left with little doubt that defendants either knew or should have known that plaintiff was dismissing the proper defendant by mistake.  If that is so, then denying plaintiff's Rule 60(b) motion could result in a miscarriage of justice.

reinstating Klie would be futile since plaintiff has not introduced sufficient facts to support a conclusion that his shoulder was injured during his arrest and thus cannot sustain an excessive force claim against any defendant.  (Def. Reply. at 12.)  Carey contends that plaintiff had a preexisting shoulder injury, and that there is no evidence in the record to support a finding that he aggravated that injury or sustained a new injury during the arrest or that he even complained about a shoulder injury during the days and months following his arrest.  (*See id.*)  Plaintiff, in response, has submitted a sworn declaration stating that during the arrest, the arresting officer "pulled [his] arms up with such extreme force that my arms made a crunching noise, as if some tendons ripped." (Vasquez Decl. ¶ 15.)  Plaintiff declares that after the arrest, he was in "extreme pain" and that he requested medical attention as soon as he saw prison staff the next morning. (*Id.*  ¶¶ 16, 20.)  Plaintiff has also introduced prison medical records showing that in the wake of his arrest, he complained in writing about shoulder pain and requested medical attention in March 2002, November 2002, and March 2003.  (*See* Attachments to Vasquez Decl.)  These facts suffice at this stage to raise a triable issue of material fact as to whether plaintiff aggravated a prior shoulder injury or sustained a new injury during his arrest on February 19, 2002.  Viewing the facts in the light most favorable to plaintiff, the Court simply cannot conclude as a matter of law on the present record that plaintiff's shoulder pain was due entirely to a preexisting injury and not due to an injury sustained during his arrest.  If plaintiff is able to prove that he was injured during the arrest, he may be able to make out an excessive force claim against Klie.  Consequently, granting plaintiff's motion to vacate the October 20, 2006 Stipulation will not be futile.[9]

---

[9] In granting plaintiff's motion, the Court effectively revives the Amended Complaint as against Klie, thus avoiding any statute of limitations problem associated with filing a new claim.  *See Fahy v. Page*, 2004 WL

## CONCLUSION

For the reasons stated above, defendant Carey's motion for summary judgment

[67] is granted. Plaintiff's motion to vacate the October 20, 2008 Stipulation as against

Klie, thereby reinstating his claims against Klie, is also granted. The Clerk of the Court

is directed to terminate defendant Tim Carey, to re-open the case against defendant Fred

Klie, and to change the caption of this case to *Vasquez v. Klie*.

SO ORDERED.

Dated: New York, New York
       March **14**, 2010

Richard J. Holwell
United States District Judge

---

1093376, at *2 (N.D. Ill. 2004) (citing *Feldman v. American Mem'l Life Ins. Co.*, 1998 WL 102663, at *3 (N.D.Ill. Mar.3, 1998); *Peterson v. BMI Refractories*, 132 F.3d 1405, 1414 (11th Cir. 1998); *see also Roberts v. Rehoboth Pharm., Inc.*, 574 F.2d 846, 848 (5th Cir. 1978)